IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

FRANKIE D WITHEY,

    Plaintiff,

v.                                                  CASE NO. 1:14-cv-224-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act (the Act).  (ECF No. 1.)   The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  (ECF Nos. 8, 18, 19.)  For the reasons discussed below, it is respectfully recommended that the Commissioner's decision be **AFFIRMED**.

### I.  PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI in March 2012, alleging disability beginning March 1, 1998, due to HIV, hepatitis C, and

fatigue.  R. 125-27, 154, 164.  His application was denied initially and upon reconsideration.  R. 72-77, 79-83.  A hearing was held before an Administrative Law Judge (ALJ) in April 2014, at which Plaintiff and a vocational expert (VE) testified.  R. 32-46.

    The ALJ  determined at Step 2 of the sequential analysis that Plaintiff had the following medically determinable impairments: HIV positivity; hepatitis C positivity; an affective disorder; a personality disorder; and polysubstance abuse/dependence in reported remission.  R. 20.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months, and therefore found that Plaintiff did not have a severe impairment or combination of impairments and was not disabled.  R. 20-28.

    The Appeals Council denied Plaintiff's request for review.  R. 1-4.  The instant appeal followed.  Plaintiff raises one issue for appeal: Whether in light of Plaintiff's HIV-related conditions, which Plaintiff contends meet the requirements of Listing 14.08B2, the ALJ's Step 2 decision is not supported by a scintilla of evidence.  ECF No. 18 at 1.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986)

district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]

---

(finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have an impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

## II. SUMMARY OF THE RECORD

### A. Plaintiff's Disability Claims and Hearing Testimony

In his initial disability and work reports, Plaintiff stated that he was six

---

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

feet tall and weighed 160 pounds. He previously worked as a short order cook, restaurant maintenance person, landscaper, dishwasher, and general laborer for a temp agency. He last performed the latter job in 2010. He related that he stopped working in December 2010 because he went to jail. He denied that his condition caused him to make any changes in his work activity. Plaintiff stated that he received medication for HIV treatment while he was in jail, but did not continue treatment following his release. He had been treated for HIV at the Alachua County Health Department (ACHD) from 2000-2004. R. 142-59.

In an April 2012 field office report, the interviewer reported that Plaintiff had no difficulty with hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, using his hands, or writing. R. 165. In a July 2012 report, the interviewer observed no difficulty with the foregoing. R. 168. In an appeal disability report, Plaintiff stated that his condition had worsened since his last report and he was experiencing more fatigue, night sweats, cold chills and "trust" (presumably "thrush"). R. 170. In a subsequent appeal disability report, Plaintiff reported worsening fatigue, "always vomiting", and

6

diarrhea. R. 177. He stated that he required help with his personal needs, had no energy, and stayed in bed. R. 179.

At the hearing, Plaintiff, through counsel, amended his onset date to March 30, 2012. Addressing counsel, the ALJ noted that Plaintiff's medical records did not reflect limitations on his ability to work and asked "[w]hat's your theory of the case?" Counsel replied that Exhibit 10F, ACHD Records, showed that Plaintiff's HIV met listing 14.08(K) based on CD4 counts[14] and weight loss, pain, nausea, night sweats, vomiting, headaches, and diarrhea. R. 35-36.

Plaintiff was 43 years old at the time of the hearing. Plaintiff testified that he was unable to work due to constant bouts of diarrhea, vomiting, and nausea. He testified that he only drank on holidays. He experienced bouts of diarrhea three or four times a week with no warning, with each episode lasting three or four hours. He had daily nausea and vomiting. Plaintiff testified that he currently weighed 175 pounds and weighed around 150 pounds when he filed his application. He testified that his weight

---

[14]A CD4 count is a laboratory test that measures the number of CD4 T lymphocytes (CD4 cells) in a sample of blood, used as an indicator in people with HIV as to how well the immune system is functioning.

fluctuates.  R. 39-40.

Plaintiff testified that he began treatment at the Health Department in March of 2013, and the he currently saw the doctor every three months. He takes medication as prescribed and experiences side effects including vomiting, diarrhea, and fatigue.  He stays inside about five out of seven days and fears that he will fall and injure himself because he is dizzy.  R. 42.

Plaintiff testified that he stopped working as a temporary laborer because he was "constantly sick."  He no longer has the energy to finish a project such as gardening.  He is able to attend to his daily needs, such as bathing and cooking, on his own.  Depending how he feels, he will sometimes spend 30 minutes making a meal, but he usually eats sandwiches and ramen noodles.  R. 43-44.

Plaintiff testified that he stopped drinking excessively when he was 27 or 28.  He receives food stamps and at the time of the hearing he lived in a tent in a friend's backyard.  R. 44.

**B.  ACHD Medical Records Relating to HIV**

Plaintiff's arguments on appeal focus on the ALJ's determination that

his HIV was not a severe impairment and Plaintiff's contention that he met the Listing for HIV, as supported by his ACHD records.  *See* ECF No. 18 (Plaintiff's memorandum, citing ACHD records at Exhibit 10F); R. 35-36 (counsel explaining theory of case during hearing).

In denying Plaintiff's claim, the ALJ discussed the record extensively, including the reports and opinions of three consultative examining medical experts and three consultative reviewing medical experts.  The ALJ's disability decision rests heavily on his conclusion that Plaintiff's complaints about the limiting effects of his impairments were not wholly credible due to "significant inconsistencies" between Plaintiff's statements to his doctors in the record and his allegations and testimony during the hearing.  R. 22-24.  Upon consideration of the record evidence, weighed against Plaintiff's claims, the ALJ found that "the claimant's subjective complaints of debilitating fatigue, nausea, and diarrhea are not sufficiently credible to warrant assigning the claimant any exertional or nonexertional work restrictions."  R. 24.

In this appeal, Plaintiff does not make any argument that the ALJ's credibility determination is erroneous or that the ALJ made any error in

assessing the medical records and opinions of the consulting and reviewing physicians. *See* ECF No. 18. Because Plaintiff's appeal is limited to the narrow issue of whether the ALJ erred in failing to find a severe impairment at Step 2, based on his claim that the ACHD records show an impairment of Listing-level severity, this medical records summary will focus on the ACHD records underlying Plaintiff's claim of error.

Plaintiff returned to care at ACHD in June 2013 after having not been on medications since 2000. R. 324. On July 25, 2013, Plaintiff presented with complaints stemming from thrush, weight loss, and hepatitis. He admitted to fatigue and feeling tired and sluggish; weakness; and weight change. He denied nausea and vomiting, admitted to having mouth pain from cavities and thrush and throat pain with swallowing, denied dizziness or headache, and admitted to a skin rash. Plaintiff stated that he had been able to eat only ramen noodles and milk, had lost weight, and was experiencing night sweats and frequent vomiting (4X daily). His weight was 155.8 pounds. His physical examination results were essentially normal and his mood and affect were appropriate. He was diagnosed with oral candidiasis, fungal nails, and genital fungal rash. His CD4 count was

181 and his HIV viral load (VL) was 97,443.  Plaintiff denied any complaints or side effects related to antiretroviral therapy (ART).  Plaintiff was prescribed Bactrim DS, Atripla, fluconazole.  R. 304-09.

In October 2013, Plaintiff again reported complaints of vomiting and constant fatigue.  He also admitted to bowel change in that he was experiencing diarrhea.  His weight was 169.4 pounds.  Plaintiff continued to have active candidiasis of the mouth and dermatophytosis of the nails.  He denied complaints or side effects related to his ART regimen.  He was prescribed Truvada, Prezista, Norvir, and fuconazole.  R. 300-04.

In December 2013, Plaintiff complained of constipation and denied nausea or vomiting.  He reported that the thrush had improved.  His weight was 174 pounds.  His physical examination was essentially normal.  His CD4 count was 261 and his HIV VL was 21,133.  Plaintiff again denied any complaints or side effects related to his ART therapy and was continued on medications.  R. 295-304.

## IV.  DISCUSSION

Plaintiff argues that his viral load of 97,443 in July 2013 as well as

fungal infections of the genitals and nails satisfy Listing 14.08B.2. Plaintiff argues that at Step 2 of the sequential evaluation an impairment is not severe only if it is a slight abnormality that has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. Plaintiff contends that as a matter of law when a claimant's impairment meets or equals a listing they are entitled to a conclusive presumption of disability, and it is therefore error as a matter of law for the ALJ to find that he did not meet the threshold requirement of severity at Step 2. ECF No. 18 at 4-5.

The Eleventh Circuit, as well as numerous other circuits, have held that step two of the sequential analysis may do no more than screen out *de minimis* claims.[15] An impairment or combination of impairments is severe at Step Two of the sequential evaluation if it significantly limits one's physical or mental ability to do basic work activities.[16] To be considered "severe" a medical condition must constitute more than a "deviation from

---

[15] Stratton v. Bowen, 827 F.2d 1447, 1453 (11th Cir. 1987); see also Anthony v. Sullivan, 954 F.2d 289, 294-95 (5th Cir. 1992); Bailey v. Sullivan, 885 F.2d 52, 56-57 (3rd Cir. 1989).

[16] 20 C.F.R. § 404.1520(c).

purely medical standards of bodily perfection or normality."[17] Although the threshold for meeting the definition of a "severe impairment" at Step Two is low, the burden is, nonetheless, on the Plaintiff to provide evidence demonstrating the disabling impact of his impairments.[18]

Here, the ALJ found that the medical evidence failed to show any severe impairment. In doing so, the ALJ in particular noted the "essentially uncontroverted" medical opinions of examining physicians Dr. Chodosh, Dr. Benton, and Dr. Nazario and of state agency medical consultants "who all opined that claimants' subjective complaints of disabling symptoms were not credible," as well as other evidence in the record such as the observations of SSA personnel and Plaintiff's inconsistent work history and earnings record. R. 23.

Of particular note are the findings of Dr. Lance Chodosh, who examined Plaintiff in June 2006 and November 2013. In 2006, Plaintiff completed a checklist claiming that he suffered from: poor appetite,

---

[17] McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[18] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

insomnia, fatigue, nocturnal sweats, difficulty concentrating, irritability or moodiness, headaches, dizziness, tinnitus, earaches, hearing problem, snoring, diarrhea, cough, exertional dyspnea, chest tightness related to breathing, joint pain or stiffness, skin problems, excessive thirst, heat intolerance, change in nails, anxiety, unusual fright, and depression with serious thoughts of suicide. However, physical examination revealed that he was a "[s]lightly weathered, but otherwise healthy appearing, well nourished, muscular man of medium to large build." Review of all systems was normal. Dr. Chodosh assessed no functional limitations except a "moderate" limitation in social interaction/adaptation. R. 216-20.

In December 2013, after Plaintiff had resumed HIV treatment with the ACHD, Dr. Chodosh again examined Plaintiff. He again assessed no functional limitations, finding that Plaintiff was able to stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally. R. 280-93.

In finding that Plaintiff did not have a severe impairment at Step 2, the ALJ also specifically addressed Plaintiff's argument that his

impairments met the requirements of Listing 14.08K due to his HIV infection with weight loss, pain, nausea, night sweats, headaches, fatigue, and marked restriction of his ability to maintain activities of daily living, as well as Plaintiff's low CD4 count. R. 27-28; see R. 36 (hearing transcript of counsel's statement that Plaintiff satisfied Listing 14.08K). The ALJ rejected this argument because the record did not document the presence of repeated manifestations of HIV infection or marked limitation in any functional areas. R. 28. Rather, the medical evidence reflected only minor fluctuations in weight and some minor manifestations of HIV such as thrush and dermophytosis of the nail beds, which occurred after an extended period of many years during which Plaintiff was not taking antiretroviral medication. The ALJ observed that these manifestations resolved after Plaintiff began treatment, and his CD4 count and viral load also improved significantly. The ALJ therefore concluded that Plaintiff's impairments did not meet listing 14.08K. R. 28.

In this appeal, Plaintiff now argues that the ACHD records support a finding that he meets Listing 14.08B.2 due to his viral load and fungal

infections of the genitals and nails, an argument that was not before the ALJ.  *See* ECF No. 18.  It therefore appears that Plaintiff has waived her right to assert this argument by not presenting it to the ALJ.[19]

Even if the argument were not waived, Plaintiff has not shown that he in fact meets the listing.  Listing 14.08 requires:

> **14.08** Human immunodeficiency virus (**HIV**) infection. With documentation as described in 14.00F and one of the following:
>
> * * *
>
> B. Fungal infections:
>
> 1. Aspergillosis; or
>
> 2. Candidiasis, involving the esophagus, trachea, bronchi, or lungs, or at a site other than the skin, urinary tract, intestinal tract, or oral or vulvovaginal mucous membranes; or
>
> 3. Coccidioidomycosis, at a site other than the lungs or lymph nodes; or
>
> 4. Cryptococcosis, at a site other than the lungs (for example, cryptococcal meningitis); or
>
> 5. Histoplasmosis, at a site other than the lungs or lymph nodes; or

---

[19] *See Bechtold v. Massanari*, 152 F.Supp.2d 1340, 1346-47 (M.D. Fla. 2001) (citing *Alacare Home Halth Servs., Inc., v. Sullivan*, 891 F.2d 850, 855 n.5 (11th Cir. 1990).

>6. Mucormycosis; or
>
>7. Pneumocystis pneumonia or extrapulmonary Pneumocystis infection[.]

20 C.F.R., Pt. 404, Subpt. P, App'x 1, 14.08B.

Plaintiff's diagnoses of candidiasis of the mouth and dermatophytosis of the nails do not fall under Listing 14.08B.2. Moreover, there is no evidence suggesting that these were ongoing conditions as the conditions improved when Plaintiff commenced treatment at the ACHD. *See* R. 296-97 (December 2013 notes; Plaintiff reported improvement in thrush, and no diagnoses of candidiasis or dermatophytosis were included in treatment plan). There is no evidence in the record that these conditions limit Plaintiff's ability to perform basic work activities.

On this record, Plaintiff's sole claim of error – that the ALJ should have found a severe impairment at Step 2 because Plaintiff meets Listing 14.08B.2 – is unsupported. Plaintiff has failed to controvert any of the medical and other evidence relied on by the ALJ in finding that Plaintiff did not meet his burden of establishing the existence of a severe impairment at Step Two.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida this 28th day of January 2016.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.